# SMALL *v.* UNITED STATES

No. 03–750.   Argued November 3, 2004—Decided April 26, 2005

BREYER, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SOUTER, and GINSBURG, JJ., joined. THOMAS, J., filed a dissenting opinion, in which SCALIA and KENNEDY, JJ., joined, *post*, p. 394. REHNQUIST, C. J., took no part in the decision of the case.

*Paul D. Boas* argued the cause for petitioner. With him on the briefs was *Stephen P. Halbrook.*

*Patricia A. Millett* argued the cause for the United States. With her on the brief were *Acting Solicitor General Clement, Assistant Attorney General Wray, Deputy Solicitor General Dreeben,* and *John A. Drennan.*

JUSTICE BREYER delivered the opinion of the Court.

The United States Criminal Code makes it

> "unlawful for any person . . . who has been *convicted in any court* of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm."   18 U. S. C. § 922(g)(1) (emphasis added).

The question before us focuses upon the words "convicted in any court." Does this phrase apply only to convictions entered in any *domestic* court or to *foreign* convictions as well? We hold that the phrase encompasses only domestic, not foreign, convictions.

I

In 1994 petitioner, Gary Small, was convicted in a Japanese court of having tried to smuggle several pistols, a rifle, and ammunition into Japan.   Small was sentenced to five years' imprisonment.   183 F. Supp. 2d 755, 757, n. 3 (WD Pa. 2002).   After his release, Small returned to the United States, where he bought a gun from a Pennsylvania gun dealer.   Federal authorities subsequently charged Small under the "unlawful gun possession" statute here at issue. 333 F. 3d 425, 426 (CA3 2003).   Small pleaded guilty while reserving the right to challenge his conviction on the ground that his earlier conviction, being a foreign conviction, fell outside the scope of the illegal gun possession statute.   The Federal District Court rejected Small's argument, as did the Court of Appeals for the Third Circuit.   183 F. Supp. 2d, at 759; 333 F. 3d, at 427, n. 2.   Because the Circuits disagree about the matter, we granted certiorari.   Compare *United States* v. *Atkins,* 872 F. 2d 94, 96 (CA4 1989) ("convicted in any court" includes foreign convictions); *United States* v. *Winson,* 793 F. 2d 754, 757–759 (CA6 1986) (same), with *United States* v. *Gayle,* 342 F. 3d 89, 95 (CA2 2003) ("convicted in any court" does not include foreign convictions); *United States* v. *Concha,* 233 F. 3d 1249, 1256 (CA10 2000) (same).

II

A

The question before us is whether the statutory reference "convicted in *any* court" includes a conviction entered in a *foreign* court. The word "any" considered alone cannot answer this question. In ordinary life, a speaker who says, "I'll see any film," may or may not mean to include films shown in another city. In law, a legislature that uses the statutory phrase " 'any person' " may or may not mean to include " 'persons' " outside "the jurisdiction of the state." See, *e. g., United States* v. *Palmer*, 3 Wheat. 610, 631 (1818) (Marshall, C. J.) ("[G]eneral words," such as the word " 'any,' " must "be limited" in their application "to those objects to which the legislature intended to apply them"); *Nixon* v. *Missouri Municipal League*, 541 U. S. 125, 132 (2004) (" 'any' " means "different things depending upon the setting"); *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 357 (1994) ("[R]espondent errs in placing dispositive weight on the broad statutory reference to 'any' law enforcement officer or agency without considering the rest of the statute"); *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U. S. 1, 15–16 (1981) (it is doubtful that the phrase " 'any statute' " includes the very statute in which the words appear); *Flora* v. *United States*, 362 U. S. 145, 149 (1960) (" '[A]ny sum,' " while a "catchall" phrase, does not "define what it catches"). Thus, even though the word "any" demands a broad interpretation, see, *e. g., United States* v. *Gonzales*, 520 U. S. 1, 5 (1997), we must look beyond that word itself.

In determining the scope of the statutory phrase we find help in the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Smith* v. *United States*, 507 U. S. 197, 204, n. 5 (1993). This notion has led the Court to adopt the legal presumption that Congress ordinarily intends its statutes to have domestic, not extrater-

ritorial, application. See *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 285 (1949); see also *Palmer, supra,* at 631 ("The words 'any person or persons,' are broad enough to comprehend every human being" but are "limited to cases within the jurisdiction of the state"); *EEOC* v. *Arabian American Oil Co.,* 499 U. S. 244, 249–251 (1991). That presumption would apply, for example, were we to consider whether this statute prohibits unlawful gun possession abroad as well as domestically. And, although the presumption against extraterritorial application does not apply directly to this case, we believe a similar assumption is appropriate when we consider the scope of the phrase "convicted in any court" here.

For one thing, the phrase describes one necessary portion of the "gun possession" activity that is prohibited as a matter of domestic law. For another, considered as a group, foreign convictions differ from domestic convictions in important ways. Past foreign convictions for crimes punishable by more than one year's imprisonment may include a conviction for conduct that domestic laws would permit, for example, for engaging in economic conduct that our society might encourage. See, *e. g.,* Art. 153 of the Criminal Code of the Russian Soviet Federated Socialist Republic, in Soviet Criminal Law and Procedure 171 (H. Berman & J. Spindler transls. 2d ed. 1972) (criminalizing "Private Entrepreneurial Activity"); Art. 153, *id.,* at 172 (criminalizing "Speculation," which is defined as "the buying up and reselling of goods or any other articles for the purpose of making a profit"); cf., *e. g.,* Gaceta Oficial de la Republica de Cuba, ch. II, Art. 103, p. 68 (Dec. 30, 1987) (forbidding propaganda that incites against the social order, international solidarity, or the Communist state). They would include a conviction from a legal system that is inconsistent with an American understanding of fairness. See, *e. g.,* U. S. Dept. of State, Country Reports on Human Rights Practices for 2003, Submitted to the House Committee on International Relations and the Senate Committee on Foreign Relations, 108th Cong., 2d Sess., 702–705,

1853, 2023 (Joint Comm. Print 2004) (describing failures of "due process" and citing examples in which "the testimony of one man equals that of two women"). And they would include a conviction for conduct that domestic law punishes far less severely. See, *e. g.*, Singapore Vandalism Act, ch. 108, §§ 2, 3, III Statutes of Republic of Singapore, pp. 257–258 (imprisonment for up to three years for an act of vandalism). Thus, the key statutory phrase "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" somewhat less reliably identifies dangerous individuals for the purposes of U. S. law where foreign convictions, rather than domestic convictions, are at issue.

In addition, it is difficult to read the statute as asking judges or prosecutors to refine its definitional distinctions where foreign convictions are at issue. To somehow weed out inappropriate foreign convictions that meet the statutory definition is not consistent with the statute's language; it is not easy for those not versed in foreign laws to accomplish; and it would leave those previously convicted in a foreign court (say, of economic crimes) uncertain about their legal obligations. Cf. 1 United States Sentencing Commission, Guidelines Manual § 4A1.2(h) (Nov. 2004) ("[S]entences resulting from foreign convictions are not counted" as a "prior sentence" for criminal history purposes).

These considerations, suggesting significant differences between foreign and domestic convictions, do not dictate our ultimate conclusion. Nor do they create a "clear statement" rule, imposing upon Congress a special burden of specificity. See *post*, at 399 (THOMAS, J., dissenting). They simply convince us that we should apply an ordinary assumption about the reach of domestically oriented statutes here—an assumption that helps us determine Congress' intent where Congress likely did not consider the matter and where other indicia of intent are in approximate balance. Cf. *ibid.* We consequently assume a congressional intent that the phrase

"convicted in any court" applies domestically, not extraterritorially. But, at the same time, we stand ready to revise this assumption should statutory language, context, history, or purpose show the contrary.

## B

We have found no convincing indication to the contrary here. The statute's language does not suggest any intent to reach beyond domestic convictions. Neither does it mention foreign convictions nor is its subject matter special, say, immigration or terrorism, where one could argue that foreign convictions would seem especially relevant. To the contrary, if read to include foreign convictions, the statute's language creates anomalies.

For example, the statute creates an exception that allows gun possession despite a prior conviction for an antitrust or business regulatory crime. 18 U. S. C. § 921(a)(20)(A). In doing so, the exception speaks of "Federal or State" antitrust or regulatory offenses. *Ibid.* If the phrase "convicted in any court" generally refers only to domestic convictions, this language causes no problem. But if "convicted in any court" includes foreign convictions, the words "Federal or State" prevent the exception from applying where a *foreign* antitrust or regulatory conviction is at issue. An individual convicted of, say, a Canadian antitrust offense could not lawfully possess a gun, Combines Investigation Act, 2 R. S. C. 1985, ch. C–34, §§ 61(6), (9), but a similar individual convicted of, say, a New York antitrust offense, could lawfully possess a gun.

For example, the statute specifies that predicate crimes include "a misdemeanor crime of domestic violence." 18 U. S. C. § 922(g)(9). Again, the language specifies that these predicate crimes include only crimes that are "misdemeanor[s] under Federal or State law." § 921(a)(33)(A). If "convicted in any court" refers only to domestic convictions, this language creates no problem. If the phrase also refers to

foreign convictions, the language creates an apparently senseless distinction between (covered) domestic relations misdemeanors committed within the United States and (uncovered) domestic relations misdemeanors committed abroad.

For example, the statute provides an enhanced penalty where unlawful gun possession rests upon three predicate convictions for a "serious drug offense." § 924(e)(1) (2000 ed., Supp. II). Again the statute defines the relevant drug crimes through reference to specific federal crimes and with the words "offense under State law." §§ 924(e)(2)(A)(i), (ii) (2000 ed.). If "convicted in any court" refers only to domestic convictions, this language creates no problem. But if the phrase also refers to foreign convictions, the language creates an apparently senseless distinction between drug offenses committed within the United States (potentially producing enhanced punishments) and similar offenses committed abroad (not producing enhanced punishments).

For example, the statute provides that offenses that are punishable by a term of imprisonment of up to two years, and characterized under state law as misdemeanors, are not predicate crimes. § 921(20). This exception is presumably based on the determination that such state crimes are not sufficiently serious or dangerous so as to preclude an individual from possessing a firearm. If "convicted in any court" refers only to domestic convictions, this language creates no problem. But if the phrase also refers to foreign convictions, the language creates another apparently senseless distinction between less serious crimes (misdemeanors punishable by more than one year's imprisonment) committed within the United States (not predicate crimes) and similar offenses committed abroad (predicate crimes). These illustrative examples taken together suggest that Congress did not consider whether the generic phrase "convicted in any court" applies to domestic as well as foreign convictions.

The statute's lengthy legislative history confirms the fact that Congress did not consider whether foreign convictions should or should not serve as a predicate to liability under the provision here at issue. Congress did consider a Senate bill containing language that would have restricted predicate offenses to domestic offenses. See S. Rep. No. 1501, 90th Cong., 2d Sess., 31 (1968) (defining predicate crimes in terms of "Federal" crimes "punishable by a term of imprisonment exceeding one year" and crimes "determined by the laws of the State to be a felony"). And the Conference Committee ultimately rejected this version in favor of language that speaks of those "convicted in any court of, a crime punishable by a term of imprisonment exceeding one year," § 928(g)(1). See H. R. Conf. Rep. No. 1956, 90th Cong., 2d Sess., 28–29 (1968). But the history does not suggest that this language change reflected a congressional view on the matter before us. Rather, the enacted version is simpler and it avoids potential difficulties arising out of the fact that States may define the term "felony" differently. And as far as the legislative history is concerned, these latter virtues of the new language fully explain the change. Thus, those who use legislative history to help discern congressional intent will see the history here as silent, hence a neutral factor, that simply confirms the obvious, namely, that Congress did not consider the issue. Others will not be tempted to use or to discuss the history at all. But cf. *post,* at 406 (THOMAS, J., dissenting).

The statute's purpose *does* offer some support for a reading of the phrase that includes foreign convictions. As the Government points out, Congress sought to " 'keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society.' " Brief for United States 16 (quoting *Dickerson* v. *New Banner Institute, Inc.,* 460 U. S. 103, 112 (1983)); see also *Lewis* v. *United States,* 445 U. S. 55, 60–62, 66 (1980); *Huddleston* v. *United States,* 415 U. S. 814, 824

(1974). And, as the dissent properly notes, *post,* at 402–403, one convicted of a serious crime abroad may well be as dangerous as one convicted of a similar crime in the United States.

The force of this argument is weakened significantly, however, by the empirical fact that, according to the Government, since 1968, there have probably been no more than "10 to a dozen" instances in which such a foreign conviction has served as a predicate for a felon-in-possession prosecution. Tr. of Oral Arg. 32. This empirical fact reinforces the likelihood that Congress, at best, paid no attention to the matter.

## C

In sum, we have no reason to believe that Congress considered the added enforcement advantages flowing from inclusion of foreign crimes, weighing them against, say, the potential unfairness of preventing those with inapt foreign convictions from possessing guns. See *supra,* at 389. The statute itself and its history offer only congressional silence. Given the reasons for disfavoring an inference of extraterritorial coverage from a statute's total silence and our initial assumption against such coverage, see *supra,* at 390–391, we conclude that the phrase "convicted in any court" refers only to domestic courts, not to foreign courts. Congress, of course, remains free to change this conclusion through statutory amendment.

For these reasons, the judgment of the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the decision of this case.

JUSTICE THOMAS, with whom JUSTICE SCALIA and JUSTICE KENNEDY join, dissenting.

Gary Small, having recently emerged from three years in Japanese prison for illegally importing weapons into that

country, bought a gun in the United States. This violated 18 U. S. C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm in or affecting commerce. Yet the majority decides that Small's gun possession did not violate the statute, because his prior convictions occurred in a Japanese court rather than an American court. In concluding that "any" means not what it says, but rather "a subset of any," the Court distorts the plain meaning of the statute and departs from established principles of statutory construction. I respectfully dissent.

I

In December 1992, Small shipped a 19-gallon electric water heater from the United States to Okinawa, Japan, ostensibly as a present for someone in Okinawa. App. to Brief for Appellant in No. 02–2785 (CA3), pp. 507a–510a, 530a–531a, 534a, 598a (hereinafter Appellant's App.). Small had sent two other water heaters to Japan that same year. *Id.*, at 523a–527a. Thinking it unusual for a person to ship a water tank from overseas as a present, *id.*, at 599a, Japanese customs officials searched the heater and discovered 2 rifles, 8 semiautomatic pistols, and 410 rounds of ammunition, *id.*, at 603a–604a; *id.*, at 262a, 267a, 277a.

The Japanese Government indicted Small on multiple counts of violating Japan's weapons-control and customs laws. *Id.*, at 261a–262a. Each offense was punishable by imprisonment for a term exceeding one year. 333 F. 3d 425, 426 (CA3 2003). Small was tried before a three-judge court in Naha, Japan, Appellant's App. 554a, convicted on all counts on April 14, 1994, 333 F. 3d, at 426, and sentenced to 5 years' imprisonment with credit for 320 days served, *id.*, at 426, n. 1; Government's Brief in Support of Detention in Crim. No. 00–160 (WD Pa.), pp. 3–4. He was paroled on November 22, 1996, and his parole terminated on May 26, 1998. 333 F. 3d, at 426, n. 1.

A week after completing parole for his Japanese convictions, on June 2, 1998, Small purchased a 9-millimeter SWD Cobray pistol from a firearms dealer in Pennsylvania. Appellant's App. 48a, 98a. Some time later, a search of his residence, business premises, and automobile revealed a .380-caliber Browning pistol and more than 300 rounds of ammunition. *Id.*, at 47a–51a, 98a–99a. This prosecution ensued.

## II

The plain terms of § 922(g)(1) prohibit Small—a person "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year"—from possessing a firearm in the United States. "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States* v. *Gonzales*, 520 U. S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976) (hereinafter Webster's 3d)); see also *Department of Housing and Urban Development* v. *Rucker*, 535 U. S. 125, 130–131 (2002) (statute making "any" drug-related criminal activity cause for termination of public housing lease precludes requirement that tenant know of the activity); *Brogan* v. *United States*, 522 U. S. 398, 400–401 (1998) (statute criminalizing "any" false statement within the jurisdiction of a federal agency allows no exception for the mere denial of wrongdoing); *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 356, 358 (1994) (statute referring to "any" law enforcement officer includes all law enforcement officers—federal, state, or local—capable of arresting for a federal crime). No exceptions appear on the face of the statute; "[n]o modifier is present, and nothing suggests any restriction," *Lewis* v. *United States*, 445 U. S. 55, 60 (1980), on the scope of the term "court." See *Gonzales, supra*, at 5 (statute referring to "'any other term of imprisonment'" includes no "language limiting the breadth of that word, and so we must read [the statute] as referring to all 'term[s] of

imprisonment'"). The broad phrase "any court" unambiguously includes all judicial bodies[1] with jurisdiction to impose the requisite conviction—a conviction for a crime punishable by imprisonment for a term of more than a year. Indisputably, Small was convicted in a Japanese court of crimes punishable by a prison term exceeding one year. The clear terms of the statute prohibit him from possessing a gun in the United States.

Of course, the phrase "any court," like all other statutory language, must be read in context. *E. g., Deal* v. *United States*, 508 U. S. 129, 132 (1993). The context of § 922(g)(1), however, suggests that there is no geographic limit on the scope of "any court."[2] By contrast to other parts of the firearms-control law that expressly mention only state or federal law, "any court" is not qualified by jurisdiction. See 18 U. S. C. § 921(a)(20) (excluding certain "Federal or State offenses" from the definition of "crime punishable by imprisonment for a term exceeding one year"); § 921(a)(33)(A)(i) (defining a "misdemeanor crime of domestic violence" by

---

[1] See, *e. g.*, The Random House Dictionary of the English Language 335 (1966) (defining "court" as "a place where justice is administered," "a judicial tribunal duly constituted for the hearing and determination of cases," "a session of a judicial assembly"); The Concise Oxford Dictionary of Current English 282 (5th ed. 1964) (defining "court" as an "[a]ssembly of judges or other persons acting as tribunal"); Webster's 3d 522 (1961) (defining "court" as "the persons duly assembled under authority of law for the administration of justice," "an official assembly legally met together for the transaction of judicial business," "a judge or judges sitting for the hearing or trial of cases").

[2] The Court's observation that "a speaker who says, 'I'll see any film,' may or may not mean to include films shown in another city," *ante*, at 388, therefore adds nothing to the analysis. The context of that statement implies that such a speaker, despite saying "any," often means only the subset of films within an accessible distance. Unlike the context of the film remark, the context of 18 U. S. C. § 922(g)(1) implies no geographic restriction.

reference to "Federal or State law").[3]   Congress' explicit use of "Federal" and "State" in other provisions shows that it specifies such restrictions when it wants to do so.

Counting foreign convictions, moreover, implicates no special federalism concerns or other clear statement rules that have justified construing "any" narrowly in the past.[4]   And it is eminently practical to put foreign convictions to the same use as domestic ones; foreign convictions indicate dangerousness just as reliably as domestic convictions.   See Part III–B, *infra*.   The expansive phrase "convicted in any court" straightforwardly encompasses Small's Japanese convictions.

## III

Faced with the inescapably broad text, the Court narrows the statute by assuming that the text applies only to domestic convictions, *ante*, at 388–389; criticizing the accuracy of foreign convictions as a proxy for dangerousness, *ante*, at 389–390; finding that the broad, natural reading of the statute "creates anomalies," *ante*, at 391; and suggesting that Congress did not consider whether foreign convictions counted, *ante*, at 393.   None of these arguments is persuasive.

---

[3] See also § 921(a)(15) (defining a "fugitive from justice," who is banned from possessing firearms under § 922(g)(2), as "any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony"); § 924(e)(2) (defining a "serious drug offense," which can trigger an enhanced sentence, by reference to particular federal laws or "State law").

[4] *Nixon* v. *Missouri Municipal League*, 541 U. S. 125 (2004), considered a federal statute authorizing pre-emption of state and local laws "prohibiting the ability of any entity" to provide telecommunications services.   *Id.,* at 128 (internal quotation marks omitted).   The Court held that the statute did not provide the clear statement required for the Federal Government to limit the States' ability to restrict delivery of such services by their own political subdivisions.   *Id.,* at 140–141; see also *id.,* at 141 (SCALIA, J., concurring in judgment); *Raygor* v. *Regents of Univ. of Minn.,* 534 U. S. 533, 540–541 (2002) ("any" in federal statute insufficiently clear statement to abrogate state sovereign immunity); *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 245–246 (1985) (same).   No such clear statement rule is at work here.

## A

The Court first invents a canon of statutory interpretation—what it terms "an ordinary assumption about the reach of domestically oriented statutes," *ante*, at 390—to cabin the statute's reach. This new "assumption" imposes a clear statement rule on Congress: Absent a clear statement, a statute refers to nothing outside the United States. The Court's denial that it has created a clear statement rule is implausible. *Ibid.* After today's ruling, the only way for Congress to ensure that courts will construe a law to refer to foreign facts or entities is to describe those facts or entities specifically as foreign. If this is not a "special burden of specificity," *ibid.*, I am not sure what is.

The Court's innovation is baseless. The Court derives its assumption from the entirely different, and well-recognized, canon against extraterritorial application of federal statutes: "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 248 (1991) (internal quotation marks omitted). But the majority rightly concedes that the canon against extraterritoriality itself "does not apply directly to this case." *Ante*, at 389. Though foreign as well as domestic convictions trigger § 922(g)(1)'s prohibition, the statute criminalizes gun possession in this country, not abroad. In prosecuting Small, the Government is enforcing a domestic criminal statute to punish domestic criminal conduct. *Pasquantino* v. *United States, ante*, at 371–372 (federal wire fraud statute covers a domestic scheme aimed at defrauding a foreign government of tax revenue).

The extraterritoriality cases cited by the Court, *ante*, at 389, do not support its new assumption. They restrict federal statutes from applying outside the territorial jurisdiction of the United States. See *Smith* v. *United States,* 507 U. S. 197, 203–204 (1993) (Federal Tort Claims Act does not apply to claims arising in Antarctica); *Arabian American*

*Oil Co., supra,* at 249–251 (Title VII of the Civil Rights Act of 1964 does not regulate the employment practices of American firms employing American citizens abroad); *Foley Bros., Inc.* v. *Filardo,* 336 U. S. 281, 285–286 (1949) (federal labor statute does not apply to a contract between the United States and a private contractor for construction work done in a foreign country); *United States* v. *Palmer,* 3 Wheat. 610, 630–634 (1818) (statute punishing piracy on the high seas does not apply to robbery committed on the high seas by a noncitizen on board a ship belonging exclusively to subjects of a foreign state). These straightforward applications of the extraterritoriality canon, restricting federal statutes from reaching conduct *beyond U. S. borders,* lend no support to the Court's unprecedented rule restricting a federal statute from reaching conduct *within U. S. borders.*

We have, it is true, recognized that the presumption against extraterritorial application of federal statutes is rooted in part in the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Smith, supra,* at 204, n. 5. But my reading of § 922(g)(1) is entirely true to that notion: Gun possession in this country is surely a "domestic concern." We have also consistently grounded the canon in the risk that extraterritorially applicable U. S. laws could conflict with foreign laws, for example, by subjecting individuals to conflicting obligations. *Arabian American Oil Co., supra,* at 248. That risk is completely absent in applying § 922(g)(1) to Small's conduct. Quite the opposite, § 922(g)(1) takes foreign law as it finds it. Aside from the extraterritoriality canon, which the Court properly concedes does not apply, I know of no principle of statutory construction justifying the result the Court reaches. Its concession that the canon is inapposite should therefore end this case.

Rather than stopping there, the Court introduces its new "assumption about the reach of domestically oriented stat-

utes" *sua sponte,* without briefing or argument on the point,[5] and without providing guidance on what constitutes a "domestically oriented statut[e]." *Ante,* at 390. The majority suggests that it means all statutes except those dealing with subjects like "immigration or terrorism," *ante,* at 391, apparently reversing our previous rule that the extraterritoriality canon "has special force" in statutes "that may involve foreign and military affairs," *Sale* v. *Haitian Centers Council, Inc.,* 509 U. S. 155, 188 (1993) (provision of the Immigration and Nationality Act does not apply extraterritorially); cf. *Palmer, supra* (statute criminalizing piracy on the high seas does not apply to robbery by noncitizen on ship belonging to foreign subjects). The Court's creation threatens to wreak havoc with the established rules for applying the canon against extraterritoriality.[6]

## B

In support of its narrow reading of the statute, the majority opines that the natural reading has inappropriate results. It points to differences between foreign and domestic convictions, primarily attacking the reliability of foreign convictions as a proxy for identifying dangerous individuals. *Ante,* at 389–390. Citing various foreign laws, the Court observes that, if interpreted to include foreign convictions, § 922(g) would include convictions for business and speech activities "that [United States] laws would permit," *ante,* at 389; convictions "from a legal system that is inconsistent with an American understanding of fairness," *ibid.;* and con-

---

[5] Neither party mentions the quasi-extraterritoriality principle that the Court fashions. The briefs barely discuss the extraterritoriality canon itself. The only reference to that canon is a footnote in the Government's brief pointing out that it is inapposite. Brief for United States 44, n. 31.

[6] The Court attempts to justify applying its new canon with the claim that "other indicia of intent are in approximate balance." *Ante,* at 390. This claim is false. Other indicia of intent are not in balance, so long as text counts as an indicium of intent. As I have explained, Part II, *supra,* the text of § 922(g)(1) encompasses foreign convictions.

victions "for conduct that [United States] law punishes far less severely," *ante*, at 390. The Court therefore concludes that foreign convictions cannot trigger § 922(g)(1)'s prohibition on firearm possession.

The Court's claim that foreign convictions punishable by imprisonment for more than a year "somewhat less reliably identif[y] dangerous individuals" than domestic convictions, *ibid.*, is untenable. In compiling examples of foreign convictions that might trigger § 922(g)(1), *ante*, at 389–390, the Court constructs a parade of horribles. Citing laws of the Russian Soviet Federated Socialist Republic, Cuba, and Singapore, it cherry-picks a few egregious examples of convictions unlikely to correlate with dangerousness, inconsistent with American intuitions of fairness, or punishable more severely than in this country. *Ibid.* This ignores countless other foreign convictions punishable by more than a year that serve as excellent proxies for dangerousness and culpability.[7] Surely a "reasonable human being" drafting this language would have considered whether foreign convictions are, on average and as a whole, accurate at gauging dangerousness and culpability, not whether the worst-of-the-worst are. Breyer, On the Uses of Legislative History in Interpreting Statutes, 65 S. Cal. L. Rev. 845, 854 (1992). The Court also ignores the facts of this very case: A week after

---

[7] Brottsbalk (Swedish Criminal Code), SFS 1962:700, ch. 3, § 1 (murder); Criminal Code of Canada, 2 R. S. C. 1985, ch. C–46, § 244(b), as amended (discharging firearm at a person with intent to endanger life); § 102(2) (making an automatic weapon); Laws of the State of Israel, Penal Law § 345(b)(2) (rape by threat of firearm or cutting weapon); Penal Code of Egypt Art. 143 (giving weapons to a detained person in order to help him escape); Federal Penal Code of Mexico Art. 139 (terrorism by explosives, toxic substances, firearms, fire, flooding, or other violent means); Art. 163 (kidnaping); Firearms Offenses Act 1968 (United Kingdom), ch. 27, § 18(1) (carrying firearm with intent to commit an indictable offense or to resist arrest); 7 Laws of the Republic of Zambia Cap. 87, ch. 19, §§ 200–201 (1995) (murder); ch. 24, § 248 (assault occasioning actual bodily harm); ch. 25, §§ 251–262 (kidnaping, abduction, and buying or selling slaves).

completing his sentence for shipping two rifles, eight semiautomatic pistols, and hundreds of rounds of ammunition into Japan, Small bought a gun in this country. It was eminently reasonable for Congress to use convictions punishable by imprisonment for more than a year—foreign no less than domestic—as a proxy for dangerousness.

Contrary to the majority's assertion, it makes sense to bar people convicted overseas from possessing guns in the United States. The Court casually dismisses this point with the observation that only "'10 to a dozen'" prosecutions under the statute have involved foreign convictions as predicate convictions. *Ante*, at 394 (quoting Tr. of Oral Arg. 32). The rarity of such prosecutions, however, only refutes the Court's simultaneous claim, *ante*, at 389–390, that a parade of horribles will result if foreign convictions count. Moreover, the Court does not claim that any of these few prosecutions has been based on a foreign conviction inconsistent with American law. As far as anyone is aware, the handful of prosecutions thus far rested on foreign convictions perfectly consonant with American law, like Small's conviction for international gunrunning. The Court has no answer for why including foreign convictions is unwise, let alone irrational.

## C

The majority worries that reading § 922(g)(1) to include foreign convictions "creates anomalies" under other firearms-control provisions. *Ante*, at 391–392. It is true, as the majority notes, that the natural reading of § 922(g)(1) affords domestic offenders more lenient treatment than foreign ones in some respects: A domestic antitrust or business regulatory offender could possess a gun, while a similar foreign offender could not; the perpetrator of a state misdemeanor punishable by two years or less in prison could possess a gun, while an analogous foreign offender could not. *Ibid.* In other respects, domestic offenders would receive harsher treatment than their foreign counterparts: One who

committed a misdemeanor crime of domestic violence in the United States could not possess a gun, while a similar foreign offender could; and a domestic drug offender could receive a 15-year mandatory minimum sentence for unlawful gun possession, while a foreign drug offender could not. *Ibid.*

These outcomes cause the Court undue concern. They certainly present no occasion to employ, nor does the Court invoke, the canon against absurdities. We should employ that canon only "where the result of applying the plain language would be, in a genuine sense, absurd, *i. e.*, where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen* v. *Department of Justice*, 491 U. S. 440, 470–471 (1989) (KENNEDY, J., concurring in judgment); *Nixon* v. *Missouri Municipal League*, 541 U. S. 125, 141 (2004) (SCALIA, J., concurring in judgment) ("avoidance of unhappy consequences" is inadequate basis for interpreting a text); cf. *Sturges* v. *Crowninshield*, 4 Wheat. 122, 203 (1819) (before disregarding the plain meaning of a constitutional provision, the case "must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application").

Here, the "anomalies" to which the Court points are not absurd. They are, at most, odd; they may even be rational. For example, it is not senseless to bar a Canadian antitrust offender from possessing a gun in this country, while exempting a domestic antitrust offender from the ban. Congress might have decided to proceed incrementally and exempt only antitrust offenses with which it was familiar, namely, domestic ones. In any event, the majority abandons the statute's plain meaning based on results that are at most incongruous and certainly not absurd. As with the extraterritoriality canon, the Court applies a mutant version of a recognized canon when the recognized canon is itself inappo-

site. Whatever the utility of canons as guides to congressional intent, they are useless when modified in ways that Congress could never have imagined in enacting § 922(g)(1).

Even assuming that my reading of the statute generates anomalies, the majority's reading creates ones even more dangerous. As explained above, the majority's interpretation permits those convicted overseas of murder, rape, assault, kidnaping, terrorism, and other dangerous crimes to possess firearms freely in the United States. *Supra*, at 402–403, and n. 7. Meanwhile, a person convicted domestically of tampering with a vehicle identification number, 18 U. S. C. § 511(a)(1), is barred from possessing firearms. The majority's concern with anomalies provides no principled basis for choosing its interpretation of the statute over mine.

## D

The Court hypothesizes "that Congress did not consider whether the generic phrase 'convicted in any court' applies to domestic as well as foreign convictions," *ante*, at 392, and takes that as license to restrict the clear breadth of the text. Whether the Court's empirical assumption is correct is anyone's guess. Regardless, we have properly rejected this method of guesswork-as-interpretation. In *Beecham* v. *United States*, 511 U. S. 368 (1994), we interpreted other provisions of the federal firearms laws to mean that a person convicted of a federal crime is not relieved of the firearms disability unless his civil rights have been restored under federal (as opposed to state) law. We acknowledged the possibility "that the phrases on which our reading of the statute turns . . . were accidents of statutory drafting," *id.*, at 374; and we observed that some legislators might have read the phrases differently from the Court's reading, "or, more likely, . . . never considered the matter at all," *ibid.* We nonetheless adhered to the unambiguous meaning of the statute. *Ibid.*; cf. *National Organization for Women, Inc.* v. *Scheidler*, 510 U. S. 249, 262 (1994) ("The fact that [the

Racketeer Influenced and Corrupt Organizations Act] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth" (internal quotation marks and brackets omitted)). Here, as in *Beecham*, "our task is not the hopeless one of ascertaining what the legislators who passed the law would have decided had they reconvened to consider [this] particular cas[e]," 511 U. S., at 374, but the eminently more manageable one of following the ordinary meaning of the text they enacted. That meaning includes foreign convictions.

The Court's reliance on the absence of any discussion of foreign convictions in the legislative history is equally unconvincing. *Ante*, at 393. Reliance on explicit statements in the history, if they existed, would be problematic enough. Reliance on silence in the history is a new and even more dangerous phenomenon. *Koons Buick Pontiac GMC, Inc.* v. *Nigh*, 543 U. S. 50, 73 (2004) (SCALIA, J., dissenting) (criticizing the Court's novel "Canon of Canine Silence").

I do not even agree, moreover, that the legislative history is silent. As the Court describes, the Senate bill that formed the basis for this legislation was amended in Conference, to change the predicate offenses from " 'Federal' crimes" punishable by more than one year's imprisonment and "crimes 'determined by the laws of a State to be a felony' " to conviction " 'in any court of, a crime punishable by a term of imprisonment exceeding one year.' " *Ante*, at 393. The Court seeks to explain this change by saying that "the enacted version is simpler and . . . avoids potential difficulties arising out of the fact that States may define the term 'felony' differently." *Ibid.* But that does not explain why all limiting reference to "Federal" and "State" was eliminated. The revised provision would have been just as simple, and would just as well have avoided the potential difficulties, if it read "convicted in any Federal or State court of a crime punishable by a term of imprisonment exceeding one year." Surely that would have been the natural change if

expansion beyond federal and state convictions were not intended. The elimination of the limiting references suggests that not *only* federal and state convictions were meant to be covered.

Some, of course, do not believe that any statement or text that has not been approved by both Houses of Congress and the President (if he signed the bill) is an appropriate source of statutory interpretation. But for those who do, this committee change ought to be strong confirmation of the fact that "any" means not "any Federal or State," but simply "any."

## IV

The Court never convincingly explains its departure from the natural meaning of § 922(g)(1). Instead, it institutes the troubling rule that "any" does not really mean "any," but may mean "some subset of 'any,'" even if nothing in the context so indicates; it distorts the established canons against extraterritoriality and absurdity; it faults without reason Congress' use of foreign convictions to gauge dangerousness and culpability; and it employs discredited methods of determining congressional intent. I respectfully dissent.