DYK, Circuit Judge,
dissenting.
This court en banc overrules our precedent that 28 U.S.C. § 1498(a) is limited to infringement under 35 U.S.C. § 271(a), precedent which led to a holding in this very case that the United States was not liable under section 1498(a) for infringement of a method patent outside the United States. Zoltek Corp. v. United States, 442 F.3d 1345, 1350 (Fed.Cir.2006). The Supreme Court denied certiorari. Zoltek Corp. v. United States, 551 U.S. 1113, 127 S.Ct. 2936, 168 L.Ed.2d 262 (2007).
The overturning of this earlier Zoltek decision here is accomplished through the extraordinary approach of sua sponte en banc action where the issue was not argued by any of the parties, and where the government itself was not a party to the appeal but participated only as amici curiae. In my view the en banc decision is beyond our jurisdiction and, in any event, is clearly incorrect on the merits. I respectfully dissent.
I Jurisdiction
This case comes to us as an interlocutory appeal certified pursuant to 28 U.S.C. § 1292(d)(2), which provides that an interlocutory appeal may be permitted if a judge of the Claims Court, “in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from *1328 that order may materially advance the ultimate termination of the litigation.” The legislative history of this exception indicates that it “should only be used in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation.” H.R.Rep. No. 85-1667, at 2 (1958).
After our 2006 holding in this case that the United States was not liable for infringement under section 1498(a), the Claims Court allowed the complaint to be amended to state an infringement claim against Lockheed and granted Zoltek’s motion to transfer this claim to the United States District Court for the Northern District of Georgia. Zoltek v. United States, 85 Fed.Cl. 409, 422 (2009). In connection with the transfer order, the Claims Court recognized that it could only transfer claims under 28 U.S.C. § 1631 if, inter alia, “the transferee court would have had jurisdiction at the time the original case was filed.” Id. at 413. On motion by Lockheed, the Claims Court amended its transfer order and certified as a controlling question of law for interlocutory appeal under 28 U.S.C. § 1292(d)(2) the issue of “whether 28 U.S.C. § 1498(c) must be construed to nullify any government contractor immunity provided in § 1498(a) when a patent infringement claim ‘aris[es] in a foreign country.’ ” Transfer Order, Zoltek Corp. v. United States, No. 96-166 C (Fed. Cl. May 14, 2009), ECF No. 385. The Claims Court’s theory apparently was that, although the Northern District of Georgia would have jurisdiction over the claims against Lockheed, it would be more efficient to determine before transfer whether Zoltek’s claim was viable.
It seems clear to me that the certified order does not confer appellate jurisdiction over the earlier dismissal of the claims against the United States. The Supreme Court has stated that for interlocutory appeals under section 1292(d)(2), “appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court.” Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).[1] However, “[t]he court of appeals may not reach beyond the certified order to address other orders made in the case,” and may only “address any issue fairly included within the certified order.” Id.
Here, the certified order was limited to transferring claims against Lockheed. The certified order does not confer appellate jurisdiction over the earlier dismissal of infringement claims against the United States. This attempt to reach beyond the certified order is nearly identical to that rejected by the Supreme Court in United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).
In Stanley, a veteran filed suit against the government in district court under the Federal Tort Claims Act (“FTCA”), alleging negligence in the administration of a drug testing program in which he participated while on active duty. Id. at 672, 107 S.Ct. 3054. The district court granted the government’s motion for summary judgment, finding that the veteran’s claims were precluded by Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), because they arose out of injuries related to his service. Stanley, 483 U.S. at 672, 107 S.Ct. 3054. On appeal, the court of appeals agreed that Feres barred Stanley’s FTCA claims against the government, though holding that the district court should have dismissed the claim *1329 against the government for lack of subject matter jurisdiction rather than disposing of the case on its merits. Id.
Thereafter, the veteran filed an amended complaint, naming as defendants certain government officers and alleging constitutional claims against those individuals under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Stanley, 483 U.S. at 674, 107 S.Ct. 3054. The district court entered an order refusing to find these claims barred, but it certified the order for interlocutory appeal under section 1292(b). Id. at 675, 107 S.Ct. 3054. On appeal again, the court of appeals affirmed the district court’s conclusion with respect to the individual defendants. Id. However, the court of appeals also indicated that, due to intervening precedent, the veteran “might have a viable FTCA claim against the United States, and that law-of-the-case principles therefore did not require adherence to the [prior] holding that [the veteran’s] FTCA claim was barred by Feres.” Id. at 675-76, 107 S.Ct. 3054. The court of appeals remanded the case to the district court with instructions to allow the veteran the opportunity to again plead an FTCA claim against the government for injuries related to his service. Id. at 676, 107 S.Ct. 3054.
On review, the Supreme Court vacated the court of appeals decision with respect to claims against the United States. The Court held that because the order appealed from was an order only refusing to dismiss the claims against the individual defendants, “[t]he Court of Appeals ... had no jurisdiction to enter orders relating to [the veteran’s] long-dismissed FTCA claims” against the United States, even though the issues involved with the two types of claims were “closely parallel! ].” Id. at 677, 107 S.Ct. 3054. The Court emphasized that the court of appeals decision on appeal to allow the district court to reinstate a claim against the government was “particularly astonishing in light of the fact that the United States was not even a party to the appeal.” Id.
Here, as in Stanley, the certified order itself in no way addressed any claims against the government. This court, in accepting this certified appeal, explained that the issues before it were “whether the trial court should have transferred the case and whether the court should have allowed the complaint to be amended to add Lockheed as a defendant.” Zoltek Corp. v. United States, Misc. No. 903, 2009 WL 3169301, at *1 (Fed.Cir. Sept. 30, 2009). There was no mention in either the Claims Court order or this court’s order of claims against the government. As the Court found in Stanley, it is astonishing that the majority’s opinion has the effect of reinstating a cause of action against the government where the government was not even a party to the appeal. Under Stanley, this court lacks jurisdiction to order reinstatement of claims against the government when the certified order addressed only the transfer of claims against a different defendant.[2] The en banc court’s action is also particularly striking insofar as it vacates the earlier Zoltek decision that the United States is not hable on a takings theory. This theory of liability is not even tangentially related to Zoltek’s claims against Lockheed, and has no *1330 relationship whatsoever to the transfer order.
II The Merits
The majority’s interpretation of section 1498 is also in my view incorrect. Section 1498(a) currently provides, in relevant part:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
28 U.S.C. § 1498(a) (emphasis added). This provision does not specify where the “use[] or manufacture[ ] by or for the United States” must occur. However, this provision, as with the patent laws generally, must be interpreted in light of the presumption against extraterritoriality which, strikingly, the majority here does not even mention. In light of this presumption, section 1498(a) was clearly intended to be limited to “use[ ] or manufacturen” of the invention only within the United States. This necessarily excludes infringement under 35 U.S.C. § 271(g) that does not depend on use or manufacture in the United States but instead on the importation into the United States of a product created by a patented process performed abroad. Nothing in the legislative history of section 1498(a) indicates that it was designed to have extraterritorial reach or that a later enacted statute, such as section 271(g), could extend its extraterritorial scope.
“It is a longstanding principle of American law ‘that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.’ ” EEOC v. Arabian Am. Oil Co. (“Aramco ”), 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1990) (quoting Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). In applying this presumption, courts “look to see whether language in the [relevant Act] gives any indication of a congressional purpose to extend its coverage” outside of the United States. Id. (alteration in original) (internal quotation mark omitted). Because we must “assume that Congress legislates against the backdrop of the presumption against extraterritoriality,” unless Congress’s affirmative intention for a provision to govern extraterritorial activity is “clearly expressed,” a statute is interpreted with the narrower scope. Id. Thus, unless congressional intent indicates to the contrary, the statutory language “applies domestically, not extraterritorially.” Small v. United States, 544 U.S. 385, 391, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005). For example, in Foley Brothers, a statute provided that “[e]very contract made to which the United States ... is a party” must have a provision permitting no more than eight hours of work in a single day. 336 U.S. at 282, 69 S.Ct. 575. Despite the broad language of the act itself, the Supreme Court held that this provision did not apply to a contract between the United States and a private contractor for work to be done in Iraq and Iran. Id. at 285, 69 S.Ct. 575. Applying the presumption against extraterritoriality, the Court concluded that there was nothing in the text of the statute itself or in the legislative history “which would lead to the belief that Congress entertained any intention other than the normal one in this case.” Id. at 286-88, 69 S.Ct. 575.
The presumption against extraterritoriality is particularly strong under the patent statutes, and is reinforced by the requirement of narrow construction of a *1331 waiver of sovereign immunity. See United States v. Nordic Village, Inc., 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). In interpreting some of the earliest patent laws, the Supreme Court emphasized that the Patent Clause of the Constitution itself “is domestic in its character, and necessarily confined within the limits of the United States.” Brown v. Duchesne, 60 U.S. 183, 195, 19 How. 183, 15 L.Ed. 595 (1856). Thus, the laws enacted by Congress under the Patent Clause “secure to the inventor a just remuneration from those who derive a profit or advantage, within the United States, from his genius and mental labors .... [T]hese acts of Congress do not, and were not intended to, operate beyond the limits of the United States.... ” Id. (emphasis added). This presumption against extraterritorial interpretation and application of the patent laws has remained strong since Brown. As the Supreme Court noted recently in Microsoft Corp. v. AT & T Corp., “[t]he presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.” 550 U.S. 437, 454-55, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007).
This presumption against extraterritoriality, articulated in Brown, existed long before Congress enacted the precursor to section 1498 in 1910. Act of June 25, 1910, Pub. L. No. 61-305, 36 Stat. 851.[3] Indeed, just a few years after the act of 1910 was passed, the Supreme Court reemphasized that “[t]he right conferred by a patent under our law is confined to the United States and its territories and infringement of this right cannot be predicated of acts wholly done in a foreign country.” Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650, 35 S.Ct. 221, 59 L.Ed. 398 (1914) (citation omitted).
Section 1498(a) on its face does not indicate that it was designed to have extraterritorial scope. Nor does the legislative history of section 1498(a) suggest any intent to have the section operate extraterritorially. Since its original enactment in 1910, this provision has been triggered whenever an invention is “used or manufactured by or for the United States.” Under the presumption against extraterritoriality, absent a contrary indication by Congress, the general phrase “use[] or manufacture[ ]” in the statute must refer only to use or manufacture within the United States, and not to use or manufacture abroad.
This is even clearer in light of the enactment of section 1498(c) in 1959, which provides that “[tjhe provisions of [section 1498] shall not apply to any claim arising in a foreign country.” Section 1498(c) was added at the same time that section 1498(b) — a parallel right of suit with respect to infringements of copyrights committed by the government — was added. See H.R.Rep. No. 86-624 (1959). The addition of subsection (c) was primarily to “provide that the provisions of this bill shall have no effect on any claim for copyright infringement against the U.S. Government arising in a foreign country.” Id. at 1. But it was also designed to reemphasize the fact that section 1498(a) requires use or manufacture within the United States. See id. at 7.
*1332 In a closely analogous situation involving section 271(a) itself, the Supreme Court in Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), reaffirmed this principle of non-extraterritoriality. In Deepsouth, which was decided before sections 271(f) and (g) were added to Title 35, the Court recognized that section 271(a), adopted as part of the Patent Act of 1952, did not change the law with respect to infringement. Id. at 530 & n. 10, 92 S.Ct. 1700. Instead, it merely codified the understanding of infringement present at the time it was enacted. Id. Furthermore, the Court held that direct infringement under section 271(a) — i.e., making, using or selling a patented invention — was limited to activity occurring within the United States. Id. at 522-23, 92 S.Ct. 1700. Thus, under the patent laws, “it [was] not an infringement to make or use a patented product outside of the United States.” Id. at 527, 92 S.Ct. 1700. The same follows for section 1498(a). At the time of its enactment, it was “not an infringement to make or use a patented product outside of the United States.” Id. Because infringement can only be premised on activity within the United States, section 1498(a) applies only where the “use[ ] or manufacture[ ] by or for the United States” occurred within the United States. See also Morrison v. Nat’l Austl. Bank Ltd., —U.S.-, 130 S.Ct. 2869, 2884-85,177 L.Ed.2d 535 (2010).
In a number of similar eases involving extraterritoriality, the Supreme Court has made clear that each triggering event defined in the statute — here, use or manufacture — must occur in the United States even though other events create a United States nexus. For example, in Small, the issue was whether a statute which made it “unlawful for any person ... who has been convicted in any court” to possess a firearm encompassed foreign as well as domestic convictions. 544 U.S. at 387, 125 S.Ct. 1752. Even though the statute covered only domestic possession and there was therefore some nexus to the United States, id. at 389,125 S.Ct. 1752, the Court determined that it “should apply an ordinary assumption about the reach of domestically oriented statutes,” that is, it assumed that Congress intended each part of the statute to apply domestically, not ex-traterritorially, unless congressional intent was explicitly otherwise. Id. at 390-91, 125 S.Ct. 1752. Because the statute’s language and legislative history did not suggest any intent to reach extraterritorial convictions as a predicate for domestic liability, it concluded that “convicted in any court” referred only to domestic courts. Id. at 394,125 S.Ct. 1752.
Most recently, in Morrison, the Second Circuit, while rejecting the claim in the particular case, reiterated that section 10(b) of the Securities Exchange Act of 1934 permits a cause of action for domestic misconduct in connection with securities traded on foreign exchanges.[4] 130 S.Ct. at 2879. The Supreme Court disagreed and, relying on the presumption against extraterritorial application, held that the statute applied only to domestic sales or purchases. Id. at 2881-83. It rejected the argument that the “manipulative or deceptive” conduct occurred in the United States, and thus the statute was merely being applied domestically. Id. at 2883-84. The Supreme Court explained that “it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States” and that “the presumption against extraterritorial
*1333 application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.” Id. at 2884. Thus, because “the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States,” finding jurisdiction over domestic misconduct related to securities traded on foreign exchanges would nonetheless violate the presumption against extraterritoriality. Id.
The majority here makes the same mistake as the Second Circuit made in Morrison. The majority assumes that section 1498(a) has no extraterritorial application under its interpretation because there is a sufficient nexus to the United States — that is, the statute applies only if the product made abroad by the patented process is ultimately used in the United States. This approach ignores the plain language of section 1498(a). Section 1498(a) is clear that it applies “[w]henever an invention ... is used.” The invention here is a process. A process is not “used” in the United States “unless each of the steps is performed within this country.” NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed.Cir.2005) (emphasis added). This process was not “used” in the United States — it was used in a foreign country and then the resulting product was imported into the United States. The use of the invention is thus plainly extraterritorial. The fact that section 1498(a) could have been written to indicate that infringement liability was triggered upon a domestic event, such as domestic use of the product, is irrelevant. As it exists, the language of section 1498(a) applies only to “use or manufacture” of an invention in the United States. That did not occur here.
Significantly, in the past, Congress has been explicit when it has expanded the extraterritorial reach of section 1498(a), as it did when it enacted 19 U.S.C. § 1337(Z). In 1940, Congress amended the trade statutes to provide that the importation of a product made abroad by a patented process constituted an unfair trade practice under section 1337, and could therefore be excluded. Act of July 2, 1940, Pub. Law No. 76-710, 54 Stat. 724. Later, in the Trade Act of 1974, Congress provided that exclusion orders could not be issued for articles imported by or for the use of the United States. Act of Jan. 3,1975, Pub. L. No. 93-618, § 341(A), 88 Stat. 1978. Instead, Congress provided a remedy against the government under section 1498(a) in such situations, providing that whenever a patent owner is denied exclusion for “any articles imported by and for the use of the United States,” such owner “shall be entitled to reasonable and entire compensation in an action before the United States Court of Federal Claims pursuant to the procedures of section 1498 of Title 28.” 19 U.S.C. § 1337(().
Section 1337(0 did not create infringement liability for products produced abroad by a patented process. This occurred only in 1988 when section 271(g) was added. No similar extension of section 1498(a) was adopted when section 271(g) was enacted. Nothing could more clearly demonstrate that if Congress intended section 1498(a) to cover infringement under section 271(g), it would have said so specifically as it did with excluded products in section 1337(i). See Aramco, 499 U.S. at 256, 111 S.Ct. 1227 (holding that “[i]t is also reasonable to conclude that had Congress intended Title VII to apply overseas, it would have addressed the subject of conflicts with foreign laws and procedures,” as it had explicitly done when it amended the Age Discrimination in Employment Act of 1967 to apply abroad). I note that the majority also urges that section 1337(Z) somehow has no effect unless section 1498(a) is read to include infringement under section 271(g). *1334 Maj. Op. at 1321. The predecessor to section 1337(Z) was enacted in substantially its present form in 1974, long before section 271(g) existed. Thus, for years before section 271(g) existed, section 1337(Z) provided a valid remedy under section 1498(a) for the non-exclusion of “articles imported by and for the use of the United States.” There is no need to read section 1498(a) to incorporate section 271(g) to make sense out of section 1337(2).
Finally, the majority mistakenly urges that the government’s liability under section 1498(a) is otherwise coextensive with potential government contractor liability, and that section 1498(a) must therefore be interpreted to incorporate section 271(g). There is no such principle underlying section 1498(a).[5] Even under the majority’s interpretation of section 1498(a) there are circumstances in which a contractor, in the course of a government contract, could potentially be held liable for patent infringement while the government is protected from suit by its sovereign immunity. The majority itself concedes that section 1498 only waives “the Government’s sovereign immunity from suit when ... the United States ... would be liable for direct infringement of the patent right for such use or manufacture if the United States was a private party.” Id. at 16 (emphasis added); see also Decca Ltd. v. United States, 640 F.2d 1156, 1167 (Ct.Cl. 1980) (“[Ejection 1498 is a waiver of sovereign immunity only with respect to a direct governmental infringement of a patent.” (footnote omitted)). Accordingly, the government has not waived its sovereign immunity with respect to indirect infringement by a contractor under sections 271(b), (c), and (f).[6] Thus, there is no anomaly in interpreting section 1498(a) as not incorporating section 271(g) infringement.
To the extent this interpretation of section 1498(a) might reveal a “loophole” in the patent laws excusing the United States from infringement liability for use in the United States of products produced abroad using a patented process, that “is properly left for Congress to consider, and to close if it finds such action warranted.” Microsoft, 550 U.S. at 457, 127 S.Ct. 1746. I respectfully dissent.

. Yamaha was interpreting 28 U.S.C. § 1292(b), which allows for certified interlocutory appeals from district courts. Because the language of sections 1292(b) and 1292(d)(2) are substantially similar, the Supreme Court’s analysis is equally applicable here. See United States v. Connolly, 716 F.2d 882, 884-85 (Fed.Cir.1983).

. The majority urges that this case is different from Stanley because this court’s decision as to the government’s liability "directly affects the transfer order that is on appeal here.” Maj. Op. at 1322 n.3. This is not correct. The necessary basis for the order transferring the claims against Lockheed pursuant to section 1631 was the Claims Court's lack of jurisdiction over the Lockheed claims, not a lack of jurisdiction over the claims against the government.

. It should be noted that although section 1498 is now codified under Title 28, the precursor to section 1498 was originally codified together with other substantive patent law provisions. See, e.g., Compiled Statutes of the United States 1913, tit. 60, ch. 1, § 9465. Indeed, from the introduction of the United States Code in 1926 until 1948, this provision was codified in section 68 of Title 35. See 35 U.S.C. § 68 (1946) (section titled "Suit for unlicensed use of invention by the United States”). Thus, as a provision of patent law itself, the presumption against extraterritoriality should apply with "particular force” in interpreting section 1498. See Microsoft, 550 U.S. at 455, 127 S.Ct. 1746.

. Section 10(b) provides that "[i]t shall be unlawful ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.” 15 U.S.C. § 78j(b).

. This argument, moreover, assumes that the contractor would be liable when the government is not, an issue presented in this case but not addressed by the majority.

. Section 271(f) was added in 1984 and provided liability where someone within the United States supplied the components of a patented invention to be assembled outside of the United States. Patent Law Amendments Act of 1984, Pub. L. No. 98-622, 98 Stat. 3383. It is clear that section 271(f) did not create liability for direct infringement. The language of section 271(f) itself mimics the language of the indirect infringement provisions of sections 271(b) and (c). Compare 35 U.S.C. § 271(f)(1) ("... actively induce the combination ...”), with 35 U.S.C. § 271(b) ("... actively induces infringement ...”); compare 35 U.S.C. § 271(f)(2) ("... component of a patented invention ... not a staple article or commodity of commerce suitable for substantial noninfringing use ...”), with 35 U.S.C. § 271(c) ("... component of a patented [invention] ... not a staple article or commodity of commerce suitable for substantial noninfringing use ...”). Furthermore, section 271(f) was enacted in response to the Supreme Court’s opinion in Deepsouth, which held that shipping the constituent parts of a patented device overseas for assembly was not an act of direct infringement. 406 U.S at 528, 92 S.Ct. 1700; see also Patent Law Amendments of 1984, S.Rep. No. 98-663, at 6 (1984) (“This proposal responds to a comment by the United States Supreme Court in [.Deepsouth ] calling for a legislative solution to close a loophole in patent law.”).